FILED
2011 Jun-08 PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SHELIA YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 10-G-1461-M |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Shelia Young, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether she has a severe impairment;
(3) whether her impairment meets or equals one listed by the Secretary;
(4) whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

    In the instant case, ALJ Edward A. Snyder determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," her impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20]. The ALJ found the plaintiff has no past relevant work. [R. 19]. Once it is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff in this case was 52 years old at the time of ALJ Edward A. Snyder's decision, who found that the plaintiff had the severe impairments of "degenerative joint disease of the right knee; polyarthritis; and obesity." [R. 15]. Her complaints of hypertension, reflux, diabetes, headaches and anxiety were found to be non-severe. Id. The ALJ found that the plaintiff has no past relevant work. [R. 19].

The plaintiff claims she became disabled on January 1, 2007. The medical records show that she presented at Marshall Medical Center South ER on January 15, 2007, complaining of right knee pain. X-rays of the right knee showed:

> no evidence of fracture, dislocation or acute deformity. There may be a small to moderate joint effusion. There is slight overgrowth of the lateral tibial spine likely related to prior or chronic trauma.

[R. 121]. The impression was no acute abnormality. Id.  Two days later, she went to Quality of Life Health Services for a follow up. She estimated her pain to be nine out of 10. [R. 127]. A January 22, 2007, MRI of her right knee showed:

> There is a small joint effusion. No osseous abnormality or chondral defect is present. The ACL, ACL, [sic] LCL and MCL are intact. No meniscal tear is identified.

[R. 162]. The impression was "[s]mall joint effusion. There is no other abnormality." Id.

On June 12, 2007, she presented to Quality of Life for a check up and prescription refills. She complained of right knee pain at a level of six out of 10. [R. 125]. She was diagnosed with right knee arthritis. A year and a half later, on December 3, 2008, the plaintiff was diagnosed with polyarthritis, hypertension, obesity, sleep problems, and anxiety. [R. 149].   Blood tests on December 4, 2008, confirmed borderline diabetes. [R. 157].

On February 17, 2009, she complained of "awful pain" (level 8) in her great toe and joints. [R. 146]. Records from Sardis City Medical Center note that the plaintiff said her reason for the visit was arthritis:

> Onset was 1 Month(s) ago. Severity level is 8. Location of the pain is bilateral hand, bilateral knee and bilateral forefoot. The patient describes the discomfort as achy. It occurs intermittently. The problem is worsening. Denies aggravating factors. Denies relieving factors. She is experiencing swelling.

[R. 188]. On examination, she was found to have mild osteoarthritis in right and left hands, with tenderness in both knees, which were positive for crepitus. [R. 190]. On

March 4, 2009, she was seen for sinusitis, cough and ear discomfort. [R. 182]. The physical examination showed lumbar muscle spasm and moderate pain with motion, and she was diagnosed with sinusitis, otitis media and lumbago. [R. 184]. However, the plaintiff had normal range of motion of extremities, and her knees had full range of motion with no swelling or effusion. Id. On March 5, 2009, x-rays and bone density scans of her thoracic and lumbar spine were normal. [R. 160-61].

> The ALJ noted that:
>
> Claimant's assertions, in essence, are that she cannot stand or walk to any substantial extent, that she experiences chronic severe pain, primarily in her right knee, that she has tension headaches requiring her to lie down for 30 minutes per day, that she suffers from anxiety, that she has difficulty sleeping, and that she must use a wheelchair to shop.
>
> *     *     *
>
> In terms of the claimant's alleged limitations on mobility, I find there to be credible evidence supporting some degree of limitation, but also find credible evidence contradicting the asserted scope of this symptom. In particular, I take note of the physical summary which records observations that claimant, though limping, was able to effectively walk without assistance and that the medical records, especially the MRI report, did not support her asserted level of pain (Exhibit 2F). Specifically, the MRI, performed on January 22, 2007, showed only a small joint effusion, the ACL, LCL and MCL were intact, no meniscal tear was identified and there was no other abnormality. Undoubtedly claimant has some degree of discomfort from her impairments, the State agency's medical consultant's report, as well as my thorough review of the record as a whole, do not support her assertion of chronic severe pain to the degree alleged.

[R. 17-18]. The ALJ found that there was little, if any, support for the plaintiff's alleged anxiety:

>her lack of any apparent attempt to obtain specialized medical treatment for
>this condition weighs against the credibility of her subjective complaints.

[R. 18]. The ALJ concluded that the "x-rays and MRI of her right knee. . . . find some abnormalities in the knee and surrounding tissues, but do not document any condition of such severity as to account for claimant's asserted levels of discomfort." Id. The ALJ ended his credibility finding as follows:

>The medical record shows that claimant has only presented to the
>emergency room twice since January 2007, her complaints are treated by
>medication with no debilitating side effects, and she has never required
>surgery or inpatient hospitalizations. The claimant's activities of daily
>living include cooking, shopping, washing dishes, doing laundry, cleaning
>up around the house and vacuuming the living room. She also cares for a
>25-year-old mentally retarded child, feeding him, helping him brush his
>teeth and helping care for his medical needs. Consequently, the claimant's
>allegations cannot be determined credible to the degree alleged.

[R. 19].

The plaintiff claims disability primarily because of chronic moderately severe right knee pain. [R. 58]. The plaintiff testified that in January 2007, her knee pain made her unable to walk, and that her legs would give away while she was standing. [R. 58-59]. She stated that she cannot stand for very long, and can only wash dishes or vacuum for 15 minutes before she needs to sit down. [R. 61-62]. She spends much of the day sitting down. [R. 59]. She testified that on an average day, her knee pain is a six or seven on a scale of zero to 10. [R. 65].

In attempting to discredit the plaintiff's pain testimony, the ALJ referenced the plaintiff's activities of daily living, including cooking, shopping, washing dishes,

doing laundry, cleaning house and vacuuming. [R. 19]. However, as testified to by the plaintiff, these activities are seriously limited. Her son helps her cook, and her husband helps her with shopping, washing dishes and the laundry. [R. 60-61]. The plaintiff does not sweep or mop, and her husband also helps her with housecleaning. [R. 61]. After vacuuming for 15 minutes, she has to sit down for most of the day[1]. Id. The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform

---

[1] The court notes that the medical evidence documents that the plaintiff continued to complain of and be treated for right knee pain from her alleged onset date going forward. [R. 125, 148, 149, 153, 172, 173].

minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

In order to find the plaintiff not disabled, the ALJ found she was capable of doing light work[2]. In doing so, the ALJ stated:

---

[2] The Commissioner's regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The definition of light work has been further clarified by Social Security Ruling 83-10:
(continued...)

As for the opinion evidence, great weight is given to the opinions of claimant's treating sources as to the existence of her various medically determinable impairments.  Great weight is also accorded to the reports of claimant's medical tests, especially the x-rays and MRI of her right knee.  These reports find some abnormalities in the knee and surrounding tissues, but do not document any condition of such severity as to account for claimant's asserted levels of discomfort.  Great weight is also given to the State agency's medical consultant report.  The State agency medical consultant, after reviewing the medical record, including objective findings, concluded that claimant did not experience a severe medically determinable impairment.  Although finding the claimant more restricted, the state agency medical consultant opinion certainly supports the residual functional capacity concluded herein.

---

²  (...continued)
The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two- thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10 **5-6 (emphasis added).

11

[R. 18]. After a careful review of the record, this court notes that no treating source offered an opinion on what the plaintiff can actually do. Additionally, there is no record of any consultative physical examinations or medical source opinions. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted). The ALJ had the opportunity to elicit additional medical evidence as to whether the plaintiff suffered from an objective medical condition that could reasonably give rise to disabling pain, but chose not to do so. See Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990)(noting the ALJ improperly analyzed the medical evidence himself rather than eliciting additional medical testimony from physicians).

The court notes that this plaintiff, as a person closely approaching advanced age, would meet the Medical Vocational Guidelines at the sedentary level of exertion because of her limited education and lack of transferrable skills. The ALJ erred in failing to find the plaintiff disabled under Medical Vocational Rule 201.14. Any conclusion by the ALJ that the plaintiff could perform more than sedentary work is not supported by substantial evidence.

**CONCLUSION**

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 8 June 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.